And we'll next hear argument in Sun. Good morning, Your Honor. May I please the Court? My name is Melanie Yang. I'm representing Petitioner Mr. Xue Huang Sen. In this case, the Petitioner believes the Court has jurisdiction to review the change of circumstances exception to the 1-year bar. Since the Real ID Act Section 106 restored the jurisdiction to the Ninth Circuit Court of Appeals, and also we have Raimunda v. Gonzalez and Chen v. Milksey say that the Court has jurisdiction to review change of circumstances. In this case, the Petitioner alerted that she made that exception of change of circumstances. Excuse me. Are you talking about jurisdiction to review the denial of the asylum application, or are you talking about something else? Asylum application. The eligibility of asylum 1-year exception to the 1-year bar. Why do we have jurisdiction to deal with that? The facts were certainly disputed on it. It's not a pure legal issue. Because the change of circumstances issue is the mixed facts and the law. What? What's mixed about it? Mixed facts and the law, whether my client met the change of circumstances exception. If she met the exception, then she filed her asylum within a reasonable period after the change of circumstances. In every case, we would have jurisdiction, if that's so, because all you're doing is saying you disagree with the IJ's analysis. Well, it doesn't really probably matter much. Okay. Let me ask you something. What bothered me was the chronology of your client's realization that the Falun Gong was being persecuted. She entered the United States on March 22, 1998. She learned of a Chinese crackdown on Falun Gong in May of 99 and that arrests were being made in July of 99 by the Chinese government. Why isn't the changed circumstances as of May 99? And why doesn't the one-year statute start running if not in May? Well, at least in July 1999, so her 2001 application is not timely at all. Your Honor, the petitioner at that time didn't realize she herself was at risk. When she realized that she herself at risk was sometimes in August and September 2000. So actually she returned a lawyer to file her asylum application in December 2000. The lawyer didn't make it by two months. Pardon me. What circumstances allow a member of Falun Gong to think that she is not personally at risk if the Chinese government is persecuting members of Falun Gong? Maybe she thought the Chinese government did not know she was a Falun Gong practitioner. After her husband and her daughter were arrested and the priest asked the husband and daughter to persuade her to come back to turn her in to the government authority, at that time she realized the government actually was targeting at her. Well, yeah, but she didn't file her asylum application for over a year after that. When she realized in September 2000 that she filed in February 2001. That's wrong. I'm sorry. You're right. So about two months later she decided to file asylum. So your position is that she knew the Falun Gong was being persecuted in 1999, but she didn't think that the government knew about her being a Falun Gong until September 2000 when her husband and child were arrested. Is that right? That's correct. And they were arrested because she sent newspaper clippings regarding the Falun Gong back to them. And then that's what tipped the Chinese authorities off that they were Falun Gong. Correct, Your Honor. Thank you. The other point is the immigration judge based her adverse criminal filing totally on speculation and conjecture in this case. Two main points the immigration judge found my client was not credible. One is the immigration judge thought my client testified that in 1986 she was forced to have an abortion. After abortion she was demoted. And later on my client testified that in 1995 she was promoted to a department manager in a small company. The IG thought these two scenarios are totally in contradiction to each other, should not be believable, impossible. And thus the IG think, you know, either my client was lying. But the IG disregarded that these two things happened nine years later. One happened in 1986, one happened in 1995. It's totally possible after nine years, you know, the government maybe forgave her because she already had forced abortion. So it's possible, you know, to promote her to a small department manager for a company, for a small company. The other part the IG thought my client is totally unbelievable is her speculation, her assumption that a local Falun Gong leader should know everything about Falun Gong. She does not need my client to mail her material from the United States to tell her what's going on about Chinese government's persecution against the Falun Gong practitioners. That assumption was wrong because although the general public or a Falun Gong practitioner knows the government forbidden Falun Gong crackdown of Falun Gong practitioners, but they do not know the extent of the persecution, the tortures, the, you know, a lot of things happened, widespread abuse against the Falun Gong practitioners. Like in the United States we can read from a lot of documents, Chinese newspapers, because here we have freedom of speech. In China they did not. So what the Chinese government, what the Chinese newspaper says about Falun Gong were totally different from what we can read in the United States. That's why my client sent the document. So the IG's conclusion, she doesn't believe it is necessary for my client to send documents, send a newspaper to China, was her speculation. This case is very similar to Zhou case, Z-H-O-U, 9th Circuit, 2006 case. In that case Ms. Zhou, Lin Zhou, also sent the Falun Gong materials to her friend in China. She did not stop her past persecution in China. She went to the United States and applied for asylum totally based on her fear the Chinese government knows she mailed those documents to her friend. And in that case the IG also did not believe the applicant. And the 9th Circuit Court reversed the adverse credibility finding and find that the IG's conclusion based on speculation, what a person should do or should not do is not basis for adverse credibility. So why couldn't the IG just simply say that makes no sense, no rational person would do that. It would just call or send the newspapers directly to your Falun Gong friends and not put your husband and daughter at risk. So I don't buy this story. I guess she did not realize this action will cause her husband and daughter to be arrested. You know, people make mistakes in their lives. That's why her husband divorced her. But that just makes no sense. So why can't the IG say that? I believe her husband's action to divorce her probably also related to this action. And if time can go back, probably she will not do that. But actually she credibly testified she did that. She maybe underestimated the Chinese government. And now she's very fearful of the Chinese government. She hopes the U.S. government can give her protection and to stay in the United States. Thank you.  Mr. LaForte. Yes, Your Honor. Deitch LaForte again on behalf of the respondents. The petitioner arrived in 1998 and filed her asylum application in 2001. The two key issues and facts that are germane to this case is the agency's adverse credibility determination and the Chinese government's 1999 Falun Gong crackdown. For the purposes of this case, it's important to note that although petitioner asserted some claims relevant to the one-child policy, on page 114 and 115 of the record, she admits that abortion was not the reason for her asylum claim. And also on page 114 of the record, she also admitted that her forced abortion did not dissuade her to return to China. So the government is going to focus in on the Falun Gong crackdown, as we believe that is the only key event that is germane to the disposition of this case. The Falun Gong crackdown happened in 1999. Now, it's important to note that petitioner claims that really the key event that set her claim in motion was in August of 2000. She says that she was at risk after her husband and daughter was arrested. But that ties right into her adverse credibility determination, because on page 119, she claims that her family was engaged in the practice of Falun Gong, but directly contradicts that testimony one page later on page 120, where she admits that neither her husband nor her daughter practiced Falun Gong. This is one of eight inconsistencies that tie into the adverse credibility determination. And under CHED 2, any one of these inconsistencies provide a valid basis for the adverse credibility determination, as long as it goes to the heart of her Falun Gong claim. Now, another example, she claims that the 1999 crackdown of Falun Gong, that she had knowledge of the 1999 Falun Gong crackdown, and on page 120 of the record, she says that it was necessary in 2000 to contact her friend who lived in China and was a Falun Gong leader to send her these newspaper articles to alert her of the government crackdown. But then on page 120 and 121 of the record, she admits that she telephoned the same friend in 1999 to apprise her of the Chinese government's crackdown on Falun Gong practitioners. She also claimed that the Chinese government had no knowledge of her Falun Gong practice. That's page 117 of the record. But then on page 102 and 118 of the record, she says that prior to her departure from China, she spent two years practicing Falun Gong daily, openly, in public, at work. I had a question about that. Here, we would assume, you know, this is possibly a little bit of a speculative question, but maybe not. In this country, if someone works for a company, we assume it's a private company unless we know otherwise. The record isn't entirely clear to me as to whether the company that she worked for was government-owned. But in China, perhaps the presumption should be the other way. I'm not sure. She worked in a wood department of the Materials Bureau, but I don't know what that means. Is there anything in the record that clearly shows one way or the other, whether the government either operated the place where she worked or oversaw it? My review of the record, no, Your Honor. The record's not clear whether it was owned by the Chinese government or whether it was private. Because if it were private, and, you know, being open at IBM about your beliefs doesn't mean the government knows, and I guess that's what I'm struggling with on that particular issue that was relied on. Well, understandably. So I think the key in that is that she testified that she practiced openly, and it started out in a small group and grew to 21 members. It also occurred over a two-year period. Notwithstanding that, that's one example of the eight inconsistencies where Ms. Sun was constantly changing her story. And under Cheb Shroob, all we need is one inconsistency to provide a valid basis for the adverse credibility determination. The key was that she constantly changed her story. Another example of that would be she claimed that she, on page 119 of the record, that she sent newspaper articles to her husband because she wanted her husband to know about the crackdown so he can continue to practice Falun Gong. But as I said previously, on page 120, she admits that her husband didn't practice Falun Gong. She also changed her story on page 115. But she said that she sent them to her husband so that he could pass it on to them, to the practitioners of Falun Gong. That's yet another example that she changed her story. Originally on page 119, she said she sent it to her husband so he would be apprised of the crackdown. But then she changes her story one page later and says, no, I actually sent it to my husband so he can pass it along to my friend. So any one of those eight inconsistencies would provide a valid basis for the agency's adverse credibility determination, under the substantial evidence standard. If the panel has no other questions, I'd like to conclude. Based on the government's presentation of its arguments in its brief, one thing I'll fail to mention is the government did submit a 28-G on Wednesday. It pertains to the jurisdictional issue and not to this, but I wanted the court and opposing counsel to be aware of it, that it was filed last Wednesday. Having said that, under the substantial evidence standard, the government feels as though there is substantial evidence in the record to support the adverse credibility conclusion. As any one of the eight inconsistencies goes to the heart of her Falun Gong claim, as such, we respectfully request that you deny her petition for review in this case. Okay. Thank you, counsel. Thank you both. The matter just argued will be submitted. And we'll take a very brief recess before hearing the final two matters on the calendar.
judges: Rymer, Graber, Bea